IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| *Plaintiff,* | § § § | SA-17-CR-00882-DAE |
| vs. | § § § | |
| (1) LUIS VALENCIA, | § § § | |
| *Defendant.* | § § | |

**REPORT AND RECOMMENDATION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge David A. Ezra:**

This Report and Recommendation and Order concerns the Government's Ex Parte Applications for Writ of Garnishment [#554, #561], which were referred to the undersigned on July 16, 2024. Also before the Court are the Answers to the Writs of Garnishment filed by the Garnishees Broadway Bank and Frost Bank [#558, #568], as well as the Objections to Writ of Garnishment and Request for Hearing filed by Blanca Villar, spouse of Defendant Luis Valencia [#572, #575], Ms. Villar's Supplement to her Objections to Writ of Garnishment [#583], the Government's responses to Ms. Villar's objections [#580, #584], the Objections to the Writ of Garnishment and Request for Hearing filed by Defendant Luis Valencia [#593, #594], Ms. Villar's Second Supplement to her Objections to Writ of Garnishment [#595], and the Government's Response to Defendant Luis Valencia's Objections to Writ of Garnishment [#599]. The requests for hearing filed by Ms. Villar and Defendant Valencia have also been referred to the undersigned for disposition. The undersigned therefore has authority to enter this recommendation and order pursuant to 28 U.S.C. §§ 636(b)(1)(A), (B). For the reasons set forth

below, the undersigned will deny Defendant's and Ms. Villar's request for a hearing and recommend Defendant's objections to the writs of garnishment be overruled; Ms. Villar's objections to the writs of garnishment be overruled in part and sustained in part; and that the Government may proceed with filing its motion for a disposition order against the Garnishee Banks as to all property identified as subject to the writs of garnishment except for the contents of Ms. Villar's safe deposit box.

## I. Background

On June 1, 2021, the Court sentenced Defendant Luis Valencia to 30 months of imprisonment after he entered a plea of guilty to one count of Wire Fraud and Aiding and Abetting in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2. In his plea agreement, Defendant agreed he would make full restitution to his victims. On July 12, 2021, the Court sentenced Defendant to pay $1,050,316.66 in restitution. (Restitution Order [#524].) On September 13, 2021, the Court subsequently amended the judgment to include the ordered restitution. (Amended Judgment [#535].)

Upon Defendant's sentence, pursuant to 18 U.S.C. § 3613(c), a lien arose and was automatically and statutorily imposed on all of Defendant's property for collection of the outstanding restitution. The Government filed the referred garnishment applications in February and March of 2023, requesting writs of garnishment against any non-exempt property within the custody, possession, or control of two financial institutions, Broadway Bank and Frost Bank ("the Garnishee Banks"), belonging to Defendant, his spouse (Blanca Villar), and Valvi Real Estate, a company owned and managed by Ms. Villar.

The District Court granted the applications and ordered service of the Writs of Garnishment on the Garnishee Banks with instructions for the filing of their answers. The

District Court also ordered service of a copy of the Writs on Defendant, Ms. Villar, and Valvi Real Estate with instructions for objecting to the Garnishees' answers and for requesting a hearing. (Orders [#555, #562].) Broadway Bank's Answer identified sole property of Ms. Villar in the form of a checking account and a safe deposit box. (Broadway Bank Answer [#558].) Frost Bank's Answer identified a commercial account in the name of Valvi Real Estate LLC. (Frost Bank Answer [#568].)

    Ms. Villar then filed objections to the writs of garnishment, asserting several issues related to service of the writs of garnishments on Defendant, claiming exemptions from garnishment as to the property held by the Garnishee Banks, and requesting a hearing. (Villar Objections and Supplement [#572, #575, #583].) The Government filed responses to Ms. Villar's objections, challenging her refusal to accept service of the writs of garnishment on behalf of Defendant and requesting that the Court deny her exemptions and order that the property at issue is subject to garnishment. (Gov't. Responses [#580, #584].)

    The garnishment proceedings were not referred to the undersigned until July 16, 2024, more than a year after the Government's writs of garnishment were issued. Upon referral of the garnishment proceedings, the undersigned held a status conference on August 14, 2024, at which counsel for the Government and Ms. Villar appeared via videoconference. After the conference, the Court ordered Ms. Villar to file any supplementation regarding her current financial status on or before August 26, 2024, due the lengthy time period that had elapsed since the initiation of garnishment proceedings. (Order [#590].) After the conference, an attorney entered an appearance for Defendant and filed objections to both the garnishments and requested a hearing. (Def. Objections [#593, #594].) Ms. Villar timely filed a supplement and renewed her request

3

for a hearing on August 21, 2024. (Villar Supplement [#595].) The objections of Defendant and Ms. Villar, as well as their request for a hearing, are now ripe for the Court's review.

## II. Analysis

After considering Defendant's and Ms. Villar's filings and the Government's responses, the undersigned finds that the objections to garnishment filed by Defendant were untimely and should not be considered. Further, even if the Court were to consider the objections, Defendant has not demonstrated he is entitled to a hearing. Ms. Villar has not either. Finally, based on the record, the Court should overrule Ms. Villar's objections to the garnishment of the bank accounts at the Garnishee Banks and order that these funds be garnished, but sustain her objection to the garnishment of the safe deposit box.

**A.    Defendant's objections to the writs of garnishment are untimely, and neither Defendant nor Ms. Villar are entitled to a hearing.**

The Government's applications for writ of garnishment were filed on February 28, 2023 (as to Broadway Bank), and March 21, 2023 (as to Frost Bank). On the same day the applications were filed, the Court ordered issuance of the requested writs of garnishment and had the writs served on the Garnishee banks. Defendant filed his objections to the garnishments on August 20, 2024, approximately 18 months later. Because Defendant's objections were not timely filed, the Court should not consider them.

According to the garnishment statute, a judgment debtor has twenty days in which to object to the garnishment and request a hearing. 28 U.S.C. 3205(c)(5). Defendant argues that the Court should consider his objections as timely because he was never served with the writs of garnishment issued by the Court or the Garnishee's answers. Defendant claims that he was therefore unable to object or request a hearing until August 2024, when he realized the attorney he had hired to represent him regarding the restitution order had never entered an appearance on

4

his behalf. Defendant's assertions are contradicted by the record before the Court and should not be credited.

The Federal Debt Collection Practices Act ("FDCPA"), which sets forth the procedures by which the United States may recover on a criminal judgment, incorporates the Federal Rules of Civil Procedure. 28 U.S.C. § 3003(f). Federal Rule of Civil Procedure 5 authorizes service by mail to the last known address of a party. *See* Fed. R. Civ. P. 5(b)(2)(C). Courts have consistently held that sending notice by mail to the last known address of a party or claimant satisfies due process requirements as to notice and an opportunity to present objections. *See, e.g.*, *Dusenbery v. United States*, 534 U.S. 161, 170–71 (2002); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *United States v. Robinson*, 434 F.3d 357, 366 (5th Cir. 2005) (potential claimants in forfeiture). "Due process does not require actual notice or actual receipt of notice." *Robinson*, 434 F.3d at 366. "Nor does it require the government to make 'heroic efforts' at notice." *Id.* (quoting *Dusenberry*, 534 U.S. at 170). "The government's written notice must be merely 'reasonably calculated, under all the circumstances' to provide notice to the claimant." *Id.* (quoting *Mullane*, 339 U.S. at 314). The requirements of due process were satisfied here.

Defendant states in his objections that he was deported to Mexico in June of 2023. From the time of his deportation until the filing of the objections by his new attorney in August 2024, Defendant had no communication with the United States Attorney's Office or this Court. Pursuant to 18 U.S.C. §§ 3572(d)(3), 3612(b)(F), and 3664(k), criminal defendants are required to notify the Attorney General and the Court of any change in mailing address or residence and any change in economic circumstances until any fine or restitution has been paid in full. (*See also* Am. J. [#535], at 1.) Defendant never contacted the Attorney General or the Court with his

new address in Mexico, and no attorney of record entered an appearance on his behalf to receive service of the writs of garnishment or answers of the Garnishees.  Service on Defendant by mail to Defendant's last know address was therefore not possible.

Where a person has no known address, as here, Federal Rule of Civil Procedure 5 authorizes service through the court clerk.  *See* Fed. R. Civ. P. 5(b)(2)(D).  In compliance with Rule 5, the Government served the court clerk on Defendant's behalf on May 1, 2023, explaining that attempts to serve notice of garnishment on Defendant had been unsuccessful due to his deportation and lack of any known address at which to reach Defendant.  (Am. Certificates of Service [#576, #577]; Notices of Attempted Service [#578, #579].)  The Government therefore satisfied the requirements of due process by serving Defendant through the court clerk pursuant to the service requirements of Rule 5(b)(2)(D).

Additionally, though not required, it appears that Defendant also had actual notice of the garnishment proceedings from both his spouse and his attorney, Alfonso Cabañas.  Defendant states in his objections that he retained counsel in June of 2023 to represent him in any litigation regarding the restitution.  The Government asserts that Kristy Callahan, Assistant U.S. Attorney, spoke with Defendant's attorney, Alfonso Cabañas, on June 12, 2023, and then met with him in person on June 15, 2023.  The Government states that Mr. Cabañas confirmed that he represented Defendant regarding the garnishments but did not need service of any documents because he "had reviewed everything on ECF."  After that meeting, according to the Government, Mr. Cabañas never provided a response to the Government nor notice that his representation had terminated until the Government reached back out to him in July 2024.  Defendant also appears to have had actual notice of the garnishments from his spouse, Ms. Villar.  Ms. Villar testified in her deposition that she had been sending e-mails to Defendant's

clients on his behalf from her current residence, paying Defendant's bills, accessing his Mexican bank accounts from San Antonio, Texas, and handling his business while he was in prison. (Villar Dep. [#580-2], at 12:10–16, 16:3–5, 18:10–20:15, 84:11–13, 98:13–101:10.)

In light of the finding that the Government satisfied due process by serving Defendant through the court clerk, the undersigned will not address Ms. Villar's arguments raised in her objections that Defendant was not served with the writs of garnishment. Additionally, neither Defendant nor Ms. Villar are entitled to a hearing on their objections to the garnishment of property held by the Garnishee banks. Even if Defendant's objections had been timely filed, Defendant has not established a basis for an evidentiary hearing. Nor has Ms. Villar.

The scope of a hearing on objections to a garnishment is limited to (1) the validity of any claim of exemption, (2) the government's compliance with the statutory requirements for the garnishment process, and (3) issues pertaining to the enforcement of a default judgment. 28 U.S.C. § 3202(d). Thus, a hearing under Section 3202(d) is only necessary where the hearing is requested for one of the three grounds under that provision. *See United States v. Stone*, 430 Fed. App'x 365, 368 (5th Cir. 2011).

The undersigned has already rejected the argument that the United States failed to satisfy its obligation to serve Defendant with the garnishments. And this garnishment proceeding arises out of Defendant's criminal sentence, not a default judgment. Neither of these categories is a basis for the requested hearing. And because Ms. Villar fails to provide any explanation for her asserted exemptions, she has also not established her right to a hearing based on the validity of any claim of exemption.

Exemptions are limited to those found in 18 U.S.C. 3613(a)(1), which are the exemptions provided for in 26 U.S.C. § 6334(a)(1)–(8), (10), and (12). These exemptions include (1)

wearing apparel and school books; (2) fuel, provisions, furniture, and personal effects; (3) books and tools of a trade; (4) unemployment benefits; (5) undelivered mail; (6) certain annuity and pension payments; (7) workmen's compensation; (8) judgments for support of minor children; (10) service-connected disability payments; and (12) assistance under Job Training Partnership Act.  26 U.S.C. § 6334(a).  Defendant has not asserted any of the enumerated exemptions as a basis for his objections to garnishment of the property identified by Broadway Bank and Frost Bank.  Instead, Defendant makes various arguments regarding community and separate property as to the property subject to garnishment.  These arguments do not constitute a legally cognizable exemption entitling Defendant to a hearing.

The same can be said as to Ms. Villar's objections.  The arguments raised in her objections are legal arguments regarding the classification of the property at issue as her solely owned or sole-management community property not subject to restitution.  Ms. Villar has attached a "Claim for Exemption Form" to her objections, claiming exemption based on (1) wearing apparel and school books; (2) fuel, provisions, furniture, and personal effects; (3) books and tools of a trade, business, or profession; and minimum exemptions for wages, salary, and other income under 26 U.S.C. § 6334(d).[1]  However, Ms. Villar has not made arguments supporting these asserted exemptions or any explanation as to how the property subject to garnishment falls within these exemptions and is therefore not entitled to a hearing.

"A defendant claiming that his property is exempt from a federal collection action bears the burden of proving he is entitled to exemption."  *See United States v. Taylor*, No. 397-CR-254-P(01), 2001 WL 1172185, at *2 (N.D. Tex. 2001) (citing 28 U.S.C. § 3014(b)(2)); *see also*

---

[1] Congress did not expressly adopt or include § 6334(d) as one of the specifically enumerated exemptions in 18 U.S.C. § 3613(c).  Instead, the enforcement of a judgment under 18 U.S.C. § 3613 is subject to the restrictions on garnishment set out in the Consumer Credit Protection Act ("CCPA"), 15 U.S.C. § 1673.  *See* 18 U.S.C. § 3613(a)(3).

28 U.S.C. § 3205(c)(5).  It is unclear on what basis Ms. Villar is arguing that the property subject to garnishment constitutes property falling under any of the exemptions identified on her exemption form.  The property identified by Broadway Bank is $16,661.04 in a checking account and a safe deposit box.  (Broadway Bank Answer [#558], at 1.)  The property identified by Frost Bank is a commercial account containing $99,978.45 in the name of Valvi Real Estate.  (Frost Bank Answer [#568], at 1.)  Ms. Villar has not identified any of this property as clothing, books, fuel, provisions, furniture, or tools.

Nor has Ms. Villar identified any plausible basis for the asserted exemption regarding wages, salary, and other income.  The CCPA places restrictions on the amount of "aggregate disposable earnings" that can be subject to garnishment.  15 U.S.C. § 1673(a).  The CCPA defines "earnings" as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program."  15 U.S.C. § 1672(a).  Ms. Villar testified in her deposition that the $182,000 placed in the Broadway Bank checking account and the funds placed in the Valvi Real Estate commercial account with Frost Bank constitute proceeds traceable to the sale of Defendant's home, not income from wages or salary or earnings.  (Villar Dep. [#580-2], at 62:4–15, 93:1–16.)  The United States has not garnished Ms. Villar's employer.  Once earnings are deposited into a financial institution, they are no longer protected from garnishment under Section 1673(a).  *See Kokoszka v. Belford*, 417 U.S. 642, 651 (1974) (the term earnings as used in 15 U.S.C. §§ 1672 and 1673 do "not pertain to every asset that is traceable in some way to such compensation").  Ms. Villar has not made any argument as to how the funds in the Valvi Real Estate commercial account with Frost Bank or the checking account containing proceeds

9

from the sale of Defendant's home constitute earnings as defined under the CCPA or salary and wages such that it would be exempt from garnishment.

In summary, the Court should decline to consider Defendant's objections to the garnishment of the property identified by Broadway Bank and Frost Bank because his objections were untimely filed, and the United States satisfied its procedural obligations regarding service of the garnishments on Defendant. Furthermore, neither Defendant nor Ms. Villar have established that they are entitled to a hearing based on the enumerated bases for hearing set forth in 28 U.S.C. § 3202(d). No hearing is required to address Ms. Villar's arguments regarding the property at issue being her sole property or sole-management community property.

**B.     Ms. Villar has not satisfied her burden to demonstrate that the funds held by the Garnishee Banks are not subject to garnishment, but the Government may not garnish the items in Ms. Villar's safe deposit box.**

Ms. Villar objects to the garnishment of the funds in the Broadway Bank checking account and Frost Bank commercial account, as well as the garnishment of the items located in the safe deposit box at Broadway Bank, on the basis that these items are her sole property or sole-management community property under Texas law and cannot be garnished to satisfy Defendant's restitution debt. Ms. Villar, as the party objecting to garnishment, bears the burden of proving the merit of her objections. 28 U.S.C. § 3205(c)(5). Ms. Villar has not carried this burden with regards to the bank accounts, but she has with regards to the safe deposit box.

### i.     The funds in Ms. Villar's bank accounts are subject to garnishment.

Ms. Villar argues the funds in the two banking accounts at issue are not subject to garnishment because they are her sole-management community property. Ms. Villar has not carried her burden to demonstrate that the funds are not subject to garnishment.

The Mandatory Victim's Restitution Act ("MVRA") authorizes the United States to pursue garnishment of property to satisfy a judgment against the debtor as if the order of restitution "were a liability for a tax assessed under the Internal Revenue Code."  18 U.S.C. § 3613(c).  The FDCPA defines property as: "any present or future interest, whether legal or equitable, in real, personal (including choses in action), or mixed property, tangible or intangible, vested or contingent, wherever located and however held (including community property and property held in trust (including spendthrift and pension trusts))."  28 U.S.C. § 3002(12).  This Court looks "initially to state law to determine what rights the [debtor] has in the property the Government seeks to reach, then to federal law to determine whether the [debtor's] state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation."  *United States v. Craft*, 535 U.S. 274, 278 (2002) (quoting *Drye v. United States*, 528 U.S. 49, 58 (1999)).

Texas is a community property state.  *See* Tex. Fam. Code § 3.002.  The Texas Family Code defines separate property as "(1) the property owned or claimed by the spouse before marriage; (2) the property acquired by the spouse during the marriage by gift, devise, or descent; and (3) recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage."  Tex. Fam. Code § 3.001. The Code defines community property as "property, other than separate property, acquired by either spouse during marriage."  *Id.* at § 3.002.  Property possessed by either spouse during marriage is presumed to be community property, with each spouse having an undivided one-half interest in the property.  *Id.* at § 3.003(a).  The degree of proof necessary to overcome this presumption and establish that property is separate property is clear and convincing evidence.  *Id.* § 3.003(b).

11

The evidence before the Court establishes that Ms. Villar married Defendant in 2005, divorced him in 2011, and then remarried him in 2015.  (Villar Dep. [#580-2], at 39:11–40:21.)  In December 2013 (while Defendant was not married to Ms. Villar), Defendant purchased a residence located at 923 Foxton in San Antonio, Texas.  (Title Documents [#580-3], at 7, 11.)  Title remained vested in Defendant until Ms. Villar sold the property in February 2022 using her power of attorney.  (Closing Documents [#580-4].)  The proceeds from the sale were approximately $183,000.  (Closing Disclosure [#580-4].)  None of this amount was applied to Defendant's restitution debt.  Instead, Ms. Villar deposited the proceeds into her personal Broadway Bank checking account.  (Broadway Bank Statement [#580-6], at 2–3.)  Approximately half of the funds were ultimately transferred to the Valvi Real Estate commercial account at Frost Bank.  (Villar Dep. [#580-2], at 59:10–4).  Ms. Villar also received over $60,000 from a roof insurance claim on the Foxton property in October 2022 and placed those funds into another personal bank account at PNC.  (Villar Dep. [#580-2], at 94:7–22).  None of these funds were applied to Defendant's restitution debt.

Ms. Villar argues generally that the funds in the subject banking accounts are her sole property or sole-management community property but has not provided the Court with any valid basis for these assertions.  It is undisputed that Defendant purchased the property at 923 Foxton at a time when he was not married to Ms. Villar.  "Real property acquired before marriage is separate property."  *Wilkerson v. Wilkerson*, 992 S.W.2d 719, 722 (Tex. App.—Austin 1999, no pet.) (citing Tex. Fam. Code § 3.001(1)).  Ms. Villar nonetheless argues that the property was community property because the property was her homestead.  But the character of Defendant's separate property does not change because community funds are spent to improve the property, when both parties jointly execute a home equity loan, or even where a party holds shared

12

homestead rights on a spouse's separate property. *Rivera v. Hernandez*, 441 S.W.3d 413, 420 (Tex. App.—El Paso 2014, pet. denied); *Denmon v. Atlas Leasing, L.L.C.*, 285 S.W.3d 591, 595 (Tex. App.—Dallas 2009, no pet.). "Characterization of property is determined by the time and circumstances of its acquisition." *Rivera*, 441 S.W.3d at 420. Moreover, "[p]roceeds from the sale of separate real estate retain their separate character." *Scott v. Scott*, 805 S.W.2d 835, 838 (Tex. App.—1991, writ denied). Accordingly, the funds from the sale of 923 Foxton also constitute Defendant's separate property subject to garnishment. There is no basis for Ms. Villar's assertion that the proceeds from the sale of this property are community property in which she has an undivided, one-half interest.[2]

Based on the evidentiary record before the Court, the United States was therefore entitled to 100 percent of the $183,618 from the sale of the Foxton property as well as the $61,258 from the roof insurance claim. These amounts total $244,876. All that remains in the two bank accounts that the United States seeks to garnish is about $116,639—less than half of those proceeds.

The Court should not exercise its equitable authority to apportion part of the proceeds to Ms. Villar due to her financial circumstances. Ms. Villar requests the Court deny the writ of garnishments as to these funds because she needs the funds to purchase a residential property for herself and her children, ages 14 to 26 years old. This is not a valid objection to a writ of

---

[2] The Government argues that Defendant had either a sole-management community property interest or a joint-management community property interest in the Foxton house he bought when the couple was divorced, and that the Government is permitted to recover all the proceeds of the sale. Although the undersigned finds that the property at issue is Defendant's sole property, the undersigned notes that even if the Court were to adopt the Government's position, the result would be the same. The property would still be subject to garnishment. *See United States v. Loftis*, 607 F.3d 173, 178–179 (5th Cir. 2010) (restitution liens attach to debtor's sole-management community property and couple's joint-management community property, including non-debtor spouse's undivided one-half interest in such property).

garnishment, even were the property Ms. Villar's and not the separate property of her husband. There is no general exemption from garnishment based on financial hardship. *United States v. Joe*, No. 3:18-CR-590-M, 2024 WL 1349057, at *3 (N.D. Tex. Mar. 5, 2024), *report and recommendation adopted*, No. 3:18-CR-590M, 2024 WL 1357601 (N.D. Tex. Mar. 28, 2024); *United States v. Gutierrez*, No. SA-17-CR-00871-OLG, 2019 WL 3229176, at *2 (W.D. Tex. July 18, 2019); *United States v. Tisdale*, No. 3:12-CV-5250-L, 2013 WL 4804286, at *5 (N.D. Tex. Sept. 9, 2013). Nor has Ms. Villar supplemented her financial information as ordered by the Court to establish current hardship. For the above reasons, the undersigned will recommend that the Court deny Ms. Villar's objections to garnishment as to the funds held in the Broadway Bank and Frost Bank accounts.

### ii. The items in the safe deposit box are not subject to garnishment.

Ms. Villar also claims the personal property in the safe deposit box is separate property not subject to garnishment. Ms. Villar provided the Court with an inventory of the items in the safe deposit box at Broadway Bank in her supplement filed on August 21, 2024. According to Ms. Villar, the safe deposit box contains jewelry, which were gifts or purchased ten to 20 years ago, and a watch received as inheritance from Ms. Villar's father. (Villar Decl. [#595], at 5–6.) Ms. Villar estimates that the value of the items is approximately $13,000. (*Id.*) The United States has not independently confirmed the contents of the safe deposit box. The Government has not responded to Ms. Villar's proffered evidence that the contents of this safe deposit box are her separate property. Given that, the Court should not order the garnishment of the box's contents.

### III.  Conclusion and Recommendation

Having considered the parties' filings and the governing law, the undersigned hereby **DENIES** Defendant's and Ms. Villar's request for a hearing and **RECOMMENDS** that Defendant's objections to garnishment [#593, #594] be **OVERRULED**; that Ms. Villar's objections to garnishment [#572, #575, #595] be **OVERRULED IN PART AND SUSTAINED IN PART**; find that the bank accounts at Broadway Bank and Frost Bank are not exempt from garnishment; find that the contents of Ms. Villar's safe deposit box are not subject to garnishment; and allow the United States to proceed with garnishment proceedings as to the bank accounts at issue but not the safe deposit box contents.

### IV.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file

timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

SIGNED this 4th day of October, 2024.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE